## PENNYPACKER v. THE CAPITAL INSURANCE COMPANY.

1. **Fire Insurance**: POLICY ISSUED IN VIOLATION OF LAW: VALIDITY. It is a general rule that when a statute annexes a penalty for the doing of an act, it implies such a prohibition as will make the act void; but to this rule there are exceptions. (See *Pangborn v. Westlake*, 36 Iowa, 548.) And where the defendant issued its policy of fire insurance upon property in the state of Pennsylvania, without having the certificate of the insurance commissioner of said state that it was qualified to do business in that state, and without having the capital required to entitle it to such certificate, *held* that the policy was not void, and that the holder could recover upon it, notwithstanding the laws of that state declared that no foreign insurance company should be permitted to issue policies of insurance upon property in said state without first having procured such certificate, and provided that any company so doing should pay a fine to said state,—such laws, however, imposing no duty or prohibition on persons receiving policies from companies which have not complied with the law. (See opinion for citations.)

2. ———: NOTICE AND PROOFS OF LOSS: EVIDENCE. In an action upon an insurance policy, plaintiff was properly permitted to show that he procured the policy through certain third persons; that he mailed notice and proofs of loss to them; and that they received them and forwarded them by mail to defendant, though such persons were not defendant's agents.

3. ———: ———: SENDING BY MAIL: PRESUMPTION. In such case, the court properly instructed that if such third persons mailed the notice and proofs of loss, properly addressed, to defendant, the presumption was that they were duly received, but that such presumption might be overcome by evidence.

4. ———: NOTICE OF LOSS: TIME OF GIVING. A requirement in a policy that notice of loss must be given forthwith, is substantially equivalent to a requirement that it be given within a reasonable time.

5. ———: NOTICE AND PROOFS OF LOSS: RECEPTION: EVIDENCE: CONFLICT. Where there was evidence that notice and proofs of loss were duly mailed to defendant, but defendant's officers and clerks who received its mail testified that no such documents were received, *held* that there was a conflict of testimony, and that the finding of the jury that they were received could not be disturbed on appeal.

6. ———: ———: DATE OF RECEPTION: SPECIAL FINDING. To a special interrogatory, "When were the proofs of loss received by defendant at its Des Moines office?" the jury answered: "Within sixty days from the date of the fire." That time being material, and there being no evidence as to the date of their reception, *held* that the answer was sufficiently definite.

*Appeal from Polk District Court.*—HON. MARCUS KAVANAGH, JR., Judge.

FILED, MAY 13, 1890.

ACTION to recover upon a policy of insurance against loss or damage by fire. The petition shows that defendant issued to plaintiff a policy upon property in Pennsylvania, insuring him against loss or damage by fire, for which he paid the premium; that while said policy was in full force the property was totally destroyed by fire, of which he gave notice and proofs of loss, as required. The defendant answered in two counts, denying generally in the first, and alleging in the second that it is a corporation organized under the laws of Iowa, with its principal place of business at Des Moines; that it had not, and was not, for want of sufficient capital stock, entitled to qualify under the laws of Pennsylvania to do business in that state, and had no office or agent in that state, and was not soliciting or doing business therein, when said policy was issued, all of which the plaintiff well knew; that said policy was issued in violation of the laws of Pennsylvania, and, therefore, void. The requirements of the

laws of Pennsylvania, as set out, are "that, before any insurance company not of that state shall be permitted to transact any insurance business within the state of Pennsylvania, or to issue any policies of insurance upon property within said state, either by itself or agents, a certificate must be obtained of the insurance commissioner of said state, certifying that it has so complied with the laws of Pennsylvania, and is authorized to transact such business within the state ; that any company, not of said state, that shall do an insurance business within said state without having first qualified itself as provided, and without first receiving the certificate required, shall pay a fine and penalty for such offense to said state." The plaintiff demurred to said second count on the following grounds : *First.* The defendant is estopped from alleging its want of authority to do business in the state of Pennsylvania; *second,* the statute of Pennsylvania does not render the contract of insurance referred to void ; *third,* the said count shows that defendant is liable to a penalty for doing an unauthorized business in the state of Pennsylvania, but shows no defense to the claim of the plaintiff herein ; *fourth,* it does not appear that the alleged contract of insurance was made in the state of Pennsylvania, and, therefore, the laws of Pennsylvania regarding insurance would have no effect; *fifth,* the defendant, having issued to the plaintiff its policy of insurance, cannot now allege a violation of law on its part to avoid its liability under said policy. This demurrer was sustained, and defendant excepted. The case was tried to a jury, the principal contention being as to whether notice and proofs of loss had been given as required. On the trial, defendant excepted to certain rulings admitting and excluding testimony, and to certain instructions. The jury found for the plaintiff, and returned with their general verdict a special finding submitted at defendant's request, and their answer, as follows : "When were the proofs of loss received by the defendant at its office in Des Moines, Iowa?"

"Within sixty days from the date of the fire." The defendant moved to set aside the verdict on the grounds of the rulings already stated, and the further ground that the verdict of the jury is contrary to the law and evidence, is the result of passion and prejudice, misconduct of the jury, and that the jury failed to answer special interrogatories by defendant. This motion being overruled, judgment was entered upon the verdict, to all of which defendant excepted, and from which it appeals.

*Read & Read* and *Phillips & Day*, for appellant.

*Cummins & Wright*, for appellee.

GIVEN, J.—I. The questions raised and argued on the demurrer may be resolved into the single inquiry, is the contract of insurance sued upon void? It is alleged that it is void because the defendant had not and was not entitled to qualify, under the laws of Pennsylvania, to contract insurance upon property in that state at the time this policy was issued, and because the plaintiff received it knowing that fact. For the purposes of the demurrer these allegations are to be taken as true, and we are to say whether, being true, they render the policy void. Appellant's contention is that the contract was made, and policy issued and accepted, in violation of the laws of Pennsylvania, as set out in the answer, and that, the plaintiff having received the policy knowing that fact, the parties are *in pari delicto*, and the law will not enforce the contract at the suit of either. Appellee contends that the policy was issued and is payable in Iowa, and its validity is, therefore, to be determined by the laws of Iowa, and that the statute set out did not forbid the issuing the policy in suit, nor make the same void, but simply declares the company liable to a fine for issuing it.

**1. FIRE INSURANCE: policy issued in violation of law: validity.**

II. It does not appear from the answer, nor from it and the petition, where the contract was made, premium paid, or policy delivered, nor where it is payable.

From the facts that the company is of Iowa, and the insured property in Pennsylvania, we may infer the contract to have been made in either state as readily as the other. Such being the state of the pleadings, we are not called upon to determine what effect the law of Pennsylvania would have upon this policy as an Iowa contract.

III.   The principle that contracts made in violation of law are void, is too well established to require citations. "The well-settled general rule is that, when a statute prohibits or attaches a penalty to the doing of an act, the act is void, and will not be enforced, nor will the law assist one to recover money or property which he has expended in the unlawful execution of it. Or, in other words, a penalty implies a prohibition, though there are no prohibitory words in the statute, and the prohibition makes the act illegal and void. * * * But, notwithstanding this general rule, it must be apparent to every legal mind that, when a statute annexes a penalty for the doing of an act, it does not always imply such a prohibition as will render the act void." *Pangborn v. Westlake*, 36 Iowa 548. The law of Pennsylvania, as set out, provides that no insurance company, not of that state, shall insure property therein, unless it has a certain amount of capital stock, has complied with certain requirements, and has obtained a certificate from the insurance commissioner that it is qualified to do business in that state,. and that any such company that shall do business in that state without having first qualified itself, and without first having received a certificate, as prescribed, from the insurance commissioner, "shall pay a fine and penalty for such offense." The evident purpose of such a law is the protection of those paying for insurance upon property in that state. The prohibition and penalty is against the company only. No duty is required of the insured, and no act upon his part expressly prohibited. There is nothing in the law declaring what effect it shall have upon policies issued and accepted as this

is alleged to have been. A number of cases are cited by appellant where, in actions brought by the insurance company to enforce rights under the contract of insurance, it was held that statutes similar to that set out were prohibitory and the contracts void ; but in none of those cases is it held that they are void as to the assured. *The Manistee*, 5 Biss. 382, is a case wherein the statute of Illinois was under consideration. That statute required foreign insurance companies to produce certain statements, and to procure authority from the auditor of state to transact business within the state, and declared it unlawful for any agent to do business without having first complied with those laws. It was provided that, upon conviction for violating these requirements, punishment by fine or imprisonment, or both, may be imposed. The court says : "Those statute laws do not declare void policies issued by foreign companies, through a local agent, in disregard or violation of them. The object of these statutes was for the security of citizens doing business with such companies, by bringing them as near as possible to local corporations, and also as a provision for revenue. Where a statute prohibits or annexes a penalty to its commission, the act is made unlawful; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. Where a statute is silent, and contains nothing from which the contrary can properly be inferred, a contract in contravention of it is void. But the whole statute must be examined in order to decide whether or not it does contain anything from which the contrary can be properly inferred. There is no penalty pronounced against a person for obtaining a policy from or doing business with the company that has not complied with the requirements of those statutes." *Insurance Co. v. McMillen*, 24 Ohio St. 67, is somewhat in point. That was an action upon a policy of life insurance issued by the plaintiff in error. The company claimed that its failure to comply with a statute similar to that under

consideration rendered the policy void. The court says: "Whether the statute was meant to invalidate policies issued by companies in contravention of its provisions; is to be determined from a consideration of the statute as a whole. The object of the act is not to make the business of life insurance unlawful, The statute is designed for the protection of policy-holders and others dealing with insurance companies. To this end, it is made unlawful for persons to act on behalf of such companies until the provisions of the statute have been complied with. But we do not think it was intended to devolve on persons dealing with the companies the duty and risk of ascertaining whether they had complied with the statute. On the contrary, it seems to have been the intention of the legislature to rely on the penalties imposed as sufficient to insure such compliance." In *Pangborn v. Westlake, supra,* the question was whether a contract for the sale of a lot in a plat that had not been recorded was void because of the statute providing that any person who shall dispose of, or offer for sale, any lot in any town or addition until the plat was acknowledged and recorded, shall forfeit fifty dollars for each lot sold or disposed of. This statute is similar in several respects to that in question. It is quite as prohibitory. It is addressed to the seller alone. It is for the protection of the purchasers, and imposes no duty upon or prohibition against them. In passing upon the question, this court said: "We are, therefore, brought to the true test, which is that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition, or to render the prohibited act void, the courts will so hold, and construe the statute accordingly." See, also, *Hill v. Smith,* 1 Iowa, 70; *Tootle v. Taylor,* 64 Iowa, 629. It is argued that to hold this contract not prohibited is to defeat

the purposes of the law ; that it will admit foreign com-
panies to do business subject only to such fines as may
be assessed.   In view of the language of the law as
stated, the absence of express prohibition, and the evi-
dent purpose to protect the insured, we are clearly of
the opinion that it was not intended to render contracts
such as that in suit void.   To so hold does not necessa-
rily admit foreign companies to do business in that
state in disregard of its laws.   The power of the courts
is ample to compel, by fine and·otherwise, compliance
with the law of the state.   The contract being valid, the
matter demurred to is no defense, and the question of
estoppel does not arise.   We think the demurrer was
properly sustained.

IV.   On the trial the plaintiff was permitted to
testify that he received the policy through Rhem & Van

2. ——: notice Deinse, of Indianapolis, Indiana ; that he
and proofs of sent notice by mail, and proofs of loss, to
loss : evi-
dence. them ; and that after sixty days he drew on
the defendant, and the draft was returned protested.
Anton J. Van Deinse was also permitted to testify, over
defendant's objection, to the receipt of the notice and
proofs of loss from the plaintiff, and that they were
forwarded by mail to the defendant.   While it is true
that Rhem & Van Deinse were not the agents of the
defendant, yet this testimony only tended to show how
and when the notice and proofs were transmitted, and
was properly admitted, if such notice and proofs may
be given in the manner stated.   That they were trans-
mitted through Rhem & Van Deinse is immaterial,
except as it tends to show whether the defendant
received them, and when.

V.   The court instructed the jury that, if Van
Deinse mailed the notice and proofs of loss, properly

3. ——: ——: addressed, to the defendant, the presump-
sending by tion is that they were duly received, but
mail : pre-
sumption. that this presumption may be overcome by
evidence.   Appellant concedes that such is the rule as
to the notice, but contends that, as the plaintiff had
sixty days in which to furnish proofs of loss, he should

be held to proof of their actual delivery. We see no reason for the distinction. The plaintiff was under the same obligation to furnish both. *Hodgkins v. Insurance Co.*, 34 Barb. 213, is relied upon. That case is not in point, as it turned upon certain express provisions in the policy not found in this. The court instructed the jury that they must find that the notice of the loss was given within a reasonable time. Appellant contends that this was erroneous, as the policy requires that it be given forthwith. We think the terms are so nearly synonymous that no prejudice could have resulted therefrom. We see no error in the instructions in either of the respects alleged. Some objection is made to the sufficiency of the proofs of loss claimed to have been forwarded, but, as no such objection appears to have been made in the lower court, it cannot be considered here.

4. ——: notice of loss: time of giving.

VI. In addition to the alleged errors already considered, it is urged that the court erred in not granting a new trial on the grounds that the verdict is not supported by the testimony, and that the special finding was not properly answered. The fact in question was whether the notice and proofs of loss had been furnished as required. For the plaintiff, there was the testimony of Van Deinse as to addressing, stamping and mailing them, and the presumption that arises therefrom. Against this, there was the testimony of the defendant's officers and clerks who received its mail that no such documents were received. It was properly left to the jury to say whether the documents were received, and they have found that they were. There is surely evidence upon which to so find, and, therefore, the verdict should not be disturbed on that ground. The special finding was answered as definitely as it could be, under the testimony. There was nothing from which to fix the precise day upon which the proofs of loss were received, except as it might be inferred from the time and place they were

5. ——: notice and proofs of loss: reception: evidence: conflict.

6. ——: ——: date of reception: special finding.

mailed. It was important to decide whether they were received within the sixty days, and this the jury could and did find as a fact from the testimony. They could not have found with the same certainty the precise day, nor was it material that they should. Our conclusion is that the judgment of the district court should be AFFIRMED.